Thompson, J;
This case is presented to the view of the Court, on a rule obtained by the late commissioner, Mr. Hunt, against Mr. Elliott, who was elected to that office during the last session of the Legislature, to show cause why he exeicised the duties thereof.
The counsel for the complainant pi edicates,his client’s claims on two grounds:
The first is, that the act of the Legislature of 1S12, limiting the duration of this officer to four years, is unconstitutional; he being a judicial officer, and consequently holding his office during good behaviour. The question then resolves itself into this, whether the master or commissioner in equity is a judge, according to the sense and meaning of the constitution.
To be a judge, it is indispensably'"necessary that he should be commissioned as such; that he should have jurisdiction, limited, or unlimited, to try causes, or to perform other juridical acts; and that he should preside in Court, and exercise judicial authority, and possess all the attributes for enforcing his opinions, or decrees. It *91 is not the exercise of a discretion incident to the performance of every office from the highest to the lowest, which will constitute the office of a judge in constitutional contemplation. Were it so, every officer in the State mightbe considered as one, as there exists none where discretion is not necessary. The master in equity has no original or final jurisdiction ; he cannot make a report, unless ordered to do so by the Court. This report, when made, has no efficacy until confirmed by an order of the Court. He can perform no act of a judicial nature, ex cept such as has been delegated to him by various acts of the Legislature, for the jourpose of facilitating the operations of public justice ; and he is nothing more than ancillary to the judges, by performing the minor duties of the Court, where no legal talent or exercise of the mind is required.
The masters in chancery, in England, have never been considered as judicial officers, with the exception of the Master of the Soils, who by some, has been considered the Vice-Chancellor; and consequently, a judicial officer: but Lord Coke doubts the propriety of his being so considered, unless when-acting under a special commission.
The view which I have taken of this case avoids the question of constitutionality, which is of extreme delicacy, and should always be considered with reverence and respect. But should a case of that kind present itself, I trust it would be decided with that firmness, which would become the dignity of the repositories of public confidence, and the organs of the law to whom this great power has been entrusted. I will observe, however, that the presumption is always in favour of the Legislature passing constitutional laws. The members are generally men of great integrity and information, and know too well the benefits which flow from that invaluable charter of rights, to touch it with unhallowed hands.
The complainant cannot say he has been deluded by a violation of public faith; he knew the duration of the office when he first accepted of the appointment. After the expiration of the term, he presented himself a second time, and was re-elected. At the end of his term, he again became a candidate, and was unsuccessful. He then offered for the office of register to which he was elected, and which he now holds. But it is contended that he can hold BOTH, and that they are not incompatible. The incompatibility of offices does not wholly depend on constitutional of legal restrictions. It may arise out of circumstances. All offices are incompatible when they interfere with each other, and when, from multiplicity of business, they cannot be executed with care and ability. The reason of the Legislature’s passing the act of 1813, creating the office which is the subject of the present controversy, was, the multiplicity of business. The master, who held this office'since 17S4, was so worn down with years, that he could not undergo the fatigue of all the duties incident thereto. This being represented to the Legislature, they appointed an assistant. There was then, and always has been a register, and the Legislature seems uniformly to have considered it a distinct and separate office.
*92 j¡. ¡g trU0j that in the country districts the offices of master and register are identified, but the reason of it is, that were they not so, no man capable of performing the duties would accept of either of them alone, owing to the paucity of business.
But there are other reasons why the offices in Charleston should not be blended. The register is the depositary of the records of the Court. "Were he allowed to act as commissioner, he would be clothed with an authority to make all sales ordered by the Court; to invest money in the funds; and perform various other acts of responsibility : and when called on, he might, were he so disposed, keep out of view the documents which would lead to his detection. Besides, it is the policy of our government to subdivide offices, in order to a more faithful performance of their duties.
The second ground js, that the ex-commissioner should be allowed to go on, and complete the sales commenced by him. The law in this case is peremptory. It is that all sales shall be made by the officer of the Court. Who is that officer 1 The Legislature has elected and the Governor has commissioned Mr. Elliott: and the moment he qualified, Mr. Hunt was functus officio. If the functions of the office ceased, by what process of reasoning can it be said, that he may yet act ? The law does not recognize two assistant-commissioners. It is the duty of the commissioner to sell property; he must make titles, which become legal muniments. This, Mr. Hunt, being out of office, cannot do.
The commissioner receives the moneys arising from sales. Suppose he should refuse to pay over these moneys ; would his sureties be liable 1 I presume they would not. They were sureties only for the faithful discharge of his duty while in office, and not for his conduct after he had gone out of office ; and in all suretiships for public officers, the Court never goes beyond the express stipulation.
Upon the whole, it appears to me, that Mr. Benjamin Elliott is the legitimate assistant master or commissioner of this Court, and ■that he is authorized to sell all property ordered for sale by the Court.
It is therefore ordered and decreed, that the injunction restraining him from the functions of his said office be dissolved, and that he be restored thereto, together with all the privileges and emoluments thereunto appertaining. And it is further ordered and decreed, that the rule be discharged with costs.
From this order the complainant appealed, and the appeal was argued in the Court of Appeals in Equity, by Hunt, King, and Lance, for the complainant, and by Gadsden, Petigru, and Ramsay, for the respondent. And the following orders were subsequently - made by that Court.
It is ordered and adjudged that the decree of the Circuit Court be affirmed, so far as the same establishes the right of Benjamin Elliott, to the tenure and enjoyment of the office of commissioner of the Court of Equity for Charleston District, and to the legal rights, *93 privileges and emoluments of the said office. It is further ordered and adjudged, that the late commissioner do deliver, or cause to be delivered forthwith to the new commissioner, all the papers, books, and documents, belonging to the office, except those coming within the provisions of the succeeding decretal order. It is further ordered and adjudged, that the late commissioner has a lien on the official papers in his hands for the fees of office legally due to him, and has a right to retain them until he is paid said fees, after which, he is directed to deliver them over to his successor. And it is further ordered and adjudged, that the late commissioner has a right to proceed and complete the sales of estates in all cases ordered by the Court to be sold by him, and which he has advertised for sale at any time during his continuance in office, and to receive the official emoluments on such sales, accounting for the surplus as heretofore, and complying with the acts of the Legislature in that respect.
Henry W. De Saussure'.
Thos. Wattes,'
Wm. D. James.
April 12, 1822.
It having been suggested that the decretal order made in this caSe has not been sufficiently explicit, as to the extent of the complainant’s right to commissions; and it being of great importance to the public interest, as well as to the parties, that such right should _be distinctly defined, so as to prevent any further, controversy on the subject: it is hereby declared to be the true meaning of the said decretal order, that the right of the late commissioner to commissions on the sales of property heretofore ordered by the Circuit Court, shall be confined to such sale's -as were actually advertised by him in some public gazette before the expiration of his office.
Henry W. De Saussure,
Thos. Wattes,
Wm. D. James.
April 13, 1822.
Judge Gaillard sat at the trial, and at the private deliberation of the Court, and would have pronounced a decree, had there been a division.